IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| INNOVATION FIRST INTERNATIONAL, INC., § § § Plaintiff-counterdefendant, § § VS. § § PRODUCT DEVELOPMENT Q, LLC, § § Defendant-counterplaintiff. § | Civil Action No. 3:12-CV-0683-D |

MEMORANDUM OPINION
AND ORDER

The instant Fed. R. Civ. P. 12(c) motion for judgment on the pleadings presents the questions whether defendant-counterplaintiff has plausibly pleaded an exception to the statute of frauds and whether it can recover on a claim for quantum meruit. Concluding that defendant-counterplaintiff has plausibly pleaded both the partial performance and equitable estoppel exceptions to the statute of frauds, and that it has not negated a basis for recovery on its quantum meruit claim, the court denies the motion.

I

Plaintiff-counterdefendant Innovation First International, Inc. ("Innovation") produces consumer robotic toys, including under the HEXBUG brand. Defendant-counterplaintiff Product Development Q, LLC ("PDQ") is a marketing and licensing firm with expertise in assisting manufacturers, such as Innovation, in obtaining licensing

agreements for their products.[1]  Beginning in late 2010 and continuing through much of 2011, Innovation sought and obtained PDQ's assistance in seeking licensing arrangements for its HEXBUG brand.  Early in the parties' relationship, PDQ sent Innovation a proposed licensing agent agreement ("Licensing Agent Agreement" or "Agreement").  The Licensing Agent Agreement provided, *inter alia*, that Innovation would pay PDQ the industry standard commission rate of 2% of sales made pursuant to any licensing agreements obtained as a result of PDQ's services.  Innovation did not sign the Licensing Agent Agreement.  Given Innovation's immediate needs at the time, however, PDQ nonetheless moved forward with its efforts at securing a licensing agreement on behalf of Innovation for the HEXBUG brand.

Over a period of several months, PDQ put forth significant effort to introduce and further the relationship between Innovation and Mind Candy, a potential licensing partner.  Specifically, PDQ made the initial product introduction to Mind Candy, arranged the necessary meetings, and was otherwise fully involved in pursuing a licensing agreement by and between Innovation and Mind Candy.  Throughout this time, PDQ made inquiries to Innovation regarding the status of the Licensing Agent Agreement, and Innovation advised PDQ that it would soon finalize the document.  Relying on Innovation's representations, PDQ continued its full efforts to obtain a licensing agreement for Innovation.  During May, June, and July 2011, Innovation paid PDQ the monthly fees prescribed by the Licensing

---

[1]In deciding this motion, the court construes PDQ's counterclaim in the light most favorable to it, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in PDQ's favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (addressing Rule 12(b)(6) motion).

Agent Agreement, which PDQ maintains justified its belief that the parties were operating under the Agreement.

Shortly before Innovation finalized a licensing agreement with Mind Candy, Innovation informed PDQ that it no longer needed PDQ's services and was terminating the relationship. Thereafter, Innovation and Mind Candy entered into a licensing agreement. Innovation and PDQ, however, never executed the Licensing Agent Agreement.

After PDQ notified Innovation of its position that Innovation had breached the Licensing Agent Agreement, PDQ filed the instant suit in state court, seeking a declaratory judgment that the Licensing Agent Agreement is unenforceable under Tex. Bus. & Com. Code Ann. § 26.01 (West 2009). After PDQ removed the case to this court, it asserted counterclaims for breach of contract and quantum meruit. PDQ also seeks a declaratory judgment that the Licensing Agent Agreement is valid and enforceable and that PDQ is entitled to recover commissions under the Agreement. Innovation moves under Rule 12(c) for judgment on the pleadings, contending that PDQ's counterclaims are barred under the statute of frauds. PDQ opposes the motion.

II

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "'A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and

any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

In deciding Innovation's motion, the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the [counterplaintiff].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). To survive Innovation's motion, PDQ must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [counterplaintiff] pleads factual content that allows the court to draw the reasonable inference that the [counterdefendant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [counterdefendant] has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the [counterclaim] has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule

8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

A

Under the Texas statute of frauds, a promise or agreement that cannot be fully performed within one year is not enforceable unless there is a writing signed by the party against whom enforcement is sought. *See* Tex. Bus. & Com. Code Ann. § 26.01. It is undisputed that the Licensing Agent Agreement had a 19½ month term and that Innovation never signed it. Accordingly, unless one of the exceptions to the statute of frauds applies, Innovation cannot recover for breach of the Licensing Agent Agreement.

Partial performance and promissory estoppel have been recognized as equity-based exceptions to the statute of frauds. "Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App. 2002, pet. denied) (citing *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App. 1985, no writ)). Promissory estoppel allows enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982);

*"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936 (Tex. 1972). Innovation argues that the pleadings show that neither the partial performance nor the estoppel exception to the statute of frauds can apply here.

B

Under the partial performance exception to the statute of frauds, an oral contract can be enforced in equity if there is strong evidence establishing the existence of an agreement and its terms, the party seeking enforcement has acted in reliance on the oral contract and suffered a substantial detriment for which it has no adequate remedy, and the other party would reap an unearned benefit if permitted to plead the statute. *See Breezevale*, 82 S.W.3d at 439. To qualify for the partial performance exception, the acts of performance by the party seeking to enforce the agreement "must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App. 1989, no writ); *Davis v. Sysco Food Servs. of Austin, L.P.*, 2009 WL 4458600, at *3 (Tex. App. Dec. 4, 2009, pet. dism'd) (mem. op.) (considering whether partial performance by party seeking to enforce unsigned agreement was unequivocally referable to the oral agreement and concluding that partial performance exception applied). Furthermore, the acts of performance "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff." *Breezevale*, 82 S.W.3d at 439-40. "Whether the performance was 'unequivocally referable' [to an oral

agreement] is generally a question of fact." *Vt. Info. Processing, Inc. v. Mont. Beverage Corp.*, 227 S.W.3d 846, 853-54 (Tex. App. 2007, no pet.) (citing *Bookout v. Bookout*, 165 S.W.3d 904, 908 (Tex. App. 2005, no pet.)).

In its counterclaim, PDQ alleges that it sent a proposed Licensing Agent Agreement to Innovation, that Innovation represented to PDQ "that the parties would soon finalize [the Licensing Agent Agreement,]" and that its continued efforts on behalf of Innovation were in "[r]el[iance] on [Innovation's] representations." Answer ¶ 33. PDQ asserts that it performed as contemplated by the Agreement by making the initial product introduction to Mind Candy, arranging the necessary meetings, and otherwise being fully involved in pursuing a licensing agreement between Innovation and Mind Candy. And PDQ also avers that, because Innovation paid the monthly fees prescribed by the Licensing Agent Agreement for the months of May, June, and July 2011, this "further justif[ied] PDQ's belief that the parties were operating pursuant to the terms of the Licensing Agent Agreement." *Id.*

Taking the allegations of PDQ's counterclaim as true and drawing all reasonable inferences in PDQ's favor, the court holds PDQ has plausibly alleged that it performed under the Licensing Agent Agreement and that its performance was "unequivocally referable" to and corroborated the existence of the Agreement. *See Breezevale*, 82 S.W.3d at 439-40. The allegations support the inference that PDQ almost fully performed as required by the Licensing Agent Agreement, with the expectation of receiving a 2% commission. And although there is authority for the proposition that "[r]endition of services for which a person

receives a monthly salary is insufficient to take the alleged agreement out of the statute of frauds because the services were fully explained by the salary without supposing any additional consideration," PDQ has alleged more than that it received monthly payments. *See Wiley*, 770 S.W.2d at 882; *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 548 (5th Cir. 2010) (same). PDQ alleges that it made inquiries to Innovation as to the status of the Licensing Agent Agreement "and was advised that the parties would soon finalize such Agreement," and that PDQ continued its full efforts in reliance on these representations. Answer ¶ 33. These allegations are sufficient to allege that PDQ's performance was unequivocally referable to the Licensing Agent Agreement and corroborative of the fact that the contract was made. *See*, *e.g.*, *Davis v. Insurtek, Inc.*, 2010 WL 5395668, at *4 (Tex. App. Dec. 30, 2010, no pet.) (mem. op.) (reversing judgment that plaintiff take nothing on breach of contract claim where, although plaintiff was paid monthly salary, there was evidence that parties had agreed that plaintiff would receive ownership in company as part of her compensation, plaintiff told company she would only come to work for it if she received ownership interest, and plaintiff was repeatedly promised that company would provide her with written agreement establishing its promise). Accordingly, the court denies Innovation's motion for judgment on the pleadings to the extent based on the statute of frauds.

C

Even if PDQ had not alleged such facts to come within the partial performance exception, its breach of contract claim would nonetheless survive Innovation's reliance on the statute of frauds because PDQ adequately pleaded the application of the promissory estoppel exception.

For the promissory estoppel exception to apply, there must have been a promise to sign a written contract that had been prepared and that would have satisfied the requirements of the statute of frauds. *See Nagle*, 633 S.W.2d at 800; *Consol. Petroleum Indus., Inc. v. Jacobs*, 648 S.W.2d 363, 367 (Tex. App. 1983, writ ref'd n.r.e.). A promise to prepare a written contract is not sufficient. The party relying on the statute of frauds must have promised to sign a particular agreement that was in writing at the time. *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App. 1992, writ denied). A "defendant should ordinarily not be promissorily estopped from asserting a . . . statute of frauds defense unless there is proof that he at least expressly promised to sign documents that had already been prepared or whose wording had been agreed on and that satisfy the requirements of" the statute of frauds. *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 770 (5th Cir. 1988) (applying Texas law).

Innovation argues that PDQ cannot rely on promissory estoppel because "PDQ has affirmatively asserted in response to [Innovation]'s pleading that the alleged agreement was not finalized." P. Br. 5 (citing Answer ¶ 33). Innovation cites *Sullivan* for the proposition that if the written contract has not been finalized, there can be no promissory estoppel. *See*

*Sullivan*, 600 F.3d at 549 ("[Plaintiff's] promissory estoppel claim nevertheless fails because he affirmatively asserted in his response to Leor's motion to dismiss that no written document was finalized, rendering him unable to satisfy the elements of promissory estoppel."). But PDQ alleges that Innovation represented that the Licensing Agent Agreement "would be worked out and signed." Answer ¶ 19. PDQ also avers that it "was advised that the parties would soon finalize such Agreement." *Id.* at ¶ 33. Although it is possible to interpret these allegations as asserting that the Agreement had not yet been *finalized*, the court is required to view the counterclaim in the light most favorable to PDQ. PDQ does not allege that the terms of the Licensing Agent Agreement were in dispute or that any specific terms were still being negotiated. PDQ also denies Innovation's allegation that Innovation "objected" to the proposed Licensing Agent Agreement. Accordingly, although PDQ alleges that the parties would soon "finalize" the Agreement, viewed favorably to PDQ and drawing all reasonable inferences in PDQ's favor, the counterclaim does not allege that the Licensing Agent Agreement was yet to be "finalized" in the sense that its terms were still being negotiated. Rather, the counterclaim alleges that the Licensing Agent Agreement was yet to be "finalized" in the sense of having been signed by the parties, but that it otherwise satisfied the requirement that it be a particular agreement which was in writing at the time. *Delta Drilling*, 821 S.W.2d at 741.[2] PDQ has therefore pleaded a second exception to the

---

[2] Innovation argues in its motion that the partial performance and promissory estoppel exceptions to the statute of frauds only permit the recovery of reliance damages. Because the court need not resolve this issue to decide the Rule 12(c) motion, it does not address this argument.

bar of the statute of frauds.

IV

Innovation also maintains that PDQ's alternative quantum meruit claim is barred because, under Texas law, quantum meruit only permits the recovery of the reasonable value of services provided to another and Innovation has already paid PDQ for the services it performed. Innovation is correct that, under Texas law, where the enforcement of a contract is barred by the statute of frauds, quantum meruit permits the recovery of the reasonable value of the services performed. *See, e.g., Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex. 1978). The reasonable value of services performed is a question of fact. *E.g., Ludlow v. DeBerry*, 959 S.W.2d 265, 268-69 (Tex. App. 1997, no pet.).

PDQ has alleged that it was paid the required monthly fees for work performed in May, June, and July 2011, but it does not allege that these fees constitute the "reasonable value" of the services it performed. Assuming that PDQ proves the elements of its quantum meruit claim,[3] a reasonable trier of fact could find that the amount Innovation paid PDQ in monthly fees is less than the "reasonable value" of the services PDQ provided, and that principles of equity require PDQ to recover the difference from Innovation. Accordingly, the court denies Innovation's Rule 12(c) motion as to PDQ's quantum meruit claim.

---

[3] Innovation does not argue that the court should dismiss the quantum meruit claim on any basis other than that PDQ has already been paid for the services it performed.

* * *

For the foregoing reasons, the court denies Innovation's June 4, 2012 motion for judgment on the pleadings.

**SO ORDERED.**

August 28, 2012.

                                          _____
                                          SIDNEY A. FITZWATER
                                          CHIEF JUDGE